✓ Priority
✓ Send
___ Clsd
✓ Enter
___ JS-5/JS-6
___ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT
JAN 27 2000
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

D.A.R.E. AMERICA, a ) Case No. CV 99-1132 VAP (Ex)
California Nonprofit )
Corporation; GLENN LEVANT, ) ORDER GRANTING IN PART AND
) DENYING IN PART DEFENDANTS'
Plaintiffs, ) MOTION FOR REVIEW AND
) RECONSIDERATION OF NONDISPOSITIVE
v. ) DISCOVERY ORDERS ISSUED BY
) MAGISTRATE JUDGE ON NOVEMBER 24,
ROLLING STONE MAGAZINE, ) 1999 AND NOVEMBER 29, 1999.
whose legal name is STRAIGHT )
ARROW PUBLISHERS CO. LP, a )
Delaware limited ) [Motion filed on 12-9-1999]
partnership; JANN WENNER; )
ROBERT LOVE; DOES 1-10, )
)
Defendants.

ENTERED
CLERK, U.S. DISTRICT COURT
JAN 31 2000
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Defendants' Motion for Reconsideration came before the Court for oral argument on January 24, 2000. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court adopts the following order, ruling that the Motion is GRANTED IN PART and DENIED IN PART.

///
///

JAN 31 2000

ENTERED ON ICMS
JAN 30 2000
CV

✓ Docketed
5 Copies / NTC Sent
NO JS-5 / JS-6
___ JS-2 / JS-3
___ CLSD

## I. Background

D.A.R.E. ("Drug Abuse Resistance Education") is a nonprofit corporation founded as a cooperative effort of the Los Angeles Police department and the Los Angeles Unified School District, whose mission is to provide in-class drug education. [Second Amended Complaint ("SAC") at 3.] Plaintiffs D.A.R.E. America and Glenn Levant, its president and founding director, sue Defendants Rolling Stone Magazine, its publisher and editor, Jann Wenner, its managing editor, Robert Love, and Does 1-20, asserting three claims of libel under California law.

On March 5, 1998, Rolling Stone published an article by Stephen Glass, entitled "Truth and D.A.R.E.," which was critical of D.A.R.E.'s curriculum and methods. Plaintiffs allege that "Truth and D.A.R.E." contained eight "specific defamatory" fabrications "that D.A.R.E. and Levant operate as a criminal enterprise by engaging in acts of coercion, intimidation and suppression, and by making threats and causing physical harm" to its detractors and critics. [SAC at 1-2, 7.]

In May 1998, several newspapers revealed that portions of Mr. Glass's Rolling Stone article were fabricated. [SAC at 9.] In July 1998, Rolling Stone published an editorial stating its intent to recheck Mr. Glass's sources; in August 1998, Rolling Stone reported the findings of its inquiry in a second editorial, and stated that certain incidents described by Mr. Glass were untrue. According to Plaintiffs, Rolling Stone further libeled D.A.R.E. by "acknowledging that only three specific threats were invented," and thus "purposely

2

conveyed to its readers that the remainder of the 1998 Article was truthful, accurate, and documented . . . ." [SAC at 9.]

## II. Proceedings

### A. Procedural History

Plaintiffs filed their original Complaint on February 2, 1999, a First Amended Complaint on April 15, 1999, and a Second Amended Complaint on June 8, 1999. Plaintiffs purport to focus the Second Amended Complaint on the "core issue" of whether Defendants' alleged libels characterized D.A.R.E. as criminal enterprise engaged in acts of coercion, intimidation, and violence. Plaintiffs state they eschewed alleging libel regarding academic and popular debate over the efficacy of the D.A.R.E. curriculum. [SAC at 1-2.]

On November 12, 1999, Defendants filed Motions to Compel Amended Responses to Defendants' First Set of Document Requests and to Defendants' First Set of Written Interrogatories. On November 24, 1999, Magistrate Judge Carolyn Turchin issued an Order denying Defendants' motion to compel amended responses to document request numbers 9, 64, 66, 68, 69, 79, 84, and 89, to the extent that the motion sought documents regarding the efficacy of the D.A.R.E. program, "provided defendants[1] stipulate that there is legitimate debate regarding the efficacy of the D.A.R.E. program." [November 24, 1999 Ord. of Mag. J. at 1-2.] The Order stated the requests were

---

[1] Since the November 24, and November 29, 1999 Orders refer to "Plaintiffs'" efficacy objection as a basis for withholding documents, the Court construes the Orders to require that Plaintiffs -- not Defendants -- stipulate that there is a genuine debate regarding the D.A.R.E. program's effectiveness.

3

"overbroad, unduly burdensome, and marginally relevant taking into account the gravamen of the current controversy," as narrowed by Plaintiffs in the Second Amended Complaint. [November 24, 1999 Ord. of Mag. J. at 1-2.] On November 29, 1999, Judge Turchin issued an Order denying Defendants' motion to compel amended responses to interrogatory numbers 3, 5, 6, 8, 9, and 10, in light of Plaintiffs' attempt to streamline their Second Amended Complaint to allege only libels by Defendants painting D.A.R.E. as a criminal enterprise. [November 29, 1999 Ord. of Mag. J at 1-2.]

B. Defendants' Motion

On December 9, 1999, Defendants brought the instant Motion seeking reconsideration of the November 24 and November 29, 1999 Orders. Defendants assert that the orders explicitly -- and mistakenly -- rely on Plaintiffs' inaccurate representation that the purpose of the Second Amended Complaint was to narrow the scope of the lawsuit to allege only libels casting D.A.R.E. as a criminal enterprise. [Defs.' Motion for Reconsideration ("Defs.' Mot. for Recons.") at 1-2.] Instead of narrowing the focus of the lawsuit, Defendants argue, the Second Amended Complaint <u>adds</u> allegations of libelous statements from the Rolling Stone article about D.A.R.E. and its supporters' efforts to silence its critics. [Defs.' Mot. for Recons. at 9-10; <u>see</u> SAC at para. 22(a)-(c).]

Defendants contend they seek information related <u>not</u> to any allegations of criminal conduct by D.A.R.E., but rather, regarding specific events described in the Rolling Stone article as examples of attempts to "silence" D.A.R.E.'s critics by playing "hardball" with

4

them. [Defs.' Mot. for Recons. at 10.] "Specifically, Plaintiffs refused to respond to requests that sought information relating to plaintiffs' attempts to suppress the RTI ["Research Triangle Institute"] study [reflecting that D.A.R.E. did not work], their attempt to intimidate the American Journal of Public Health [and prevent publication of the unfavorable results of the RTI study], and their attempt to silence "Dateline NBC" [by falsely alleging that the television news program staged certain events in order to pressure its producers not to broadcast a show about D.A.R.E.'s ineffectiveness]." [Defs.' Mot. for Recons. at 7-9, 10, 14-17.]

Defendants insist the Orders' reliance on Plaintiffs' misleading description of the gravamen of their Second Amended Complaint was "misplaced," because Plaintiffs mischaracterized four of the eight allegations of libel. [Defs.' Mot. for Recons. at 11.] According to Defendants, these actually pertain to D.A.R.E.'s efforts to intimidate its detractors, but Plaintiffs include them among statements about D.A.R.E.'s criminal activity that have been debunked as fabricated, and whose truth Defendants do not assert. [See Defs.' Mot. for Recons. at 3.]

The Orders, Defendants argue, deprive them of discovery that is directly relevant to the affirmative defense that the allegations added in the Second Amended Complaint are substantially true. [Defs.' Mot. for Recons. at 11-12.]
///
///
///

## C. Plaintiffs' Opposition

In their Opposition to Defendants' Motion for Reconsideration ("Pls.' Opp."), Plaintiffs assert that the statements highlighted by Defendants regarding the unfavorable RTI study, the prospective publication of the results of that study in the American Journal of Public Health, and airing a story on "Dateline NBC" critical of D.A.R.E., "are not in issue in the lawsuit" because they do not pertain to the Rolling Stone article's "allegations of unlawful conduct upon which D.A.R.E. brought this lawsuit, nor legitimate or even critical dialogue about efficacy" of the program. [Pls.' Opp. at 4.]

Plaintiffs insist the Second Amended Complaint "pare[d] down the claims of libel to only instances [where the Rolling Stone article described] unlawful conduct" by D.A.R.E. and its supporters, [Pls.' Opp. at 5]; they insist all eight purportedly libelous statements set forth in the Second Amended Complaint pertain to outright unlawful acts, not merely pressuring D.A.R.E.'s opponents to muffle their criticism. [Pls.' Opp. at 6.]

Plaintiffs assert that the discovery sought by Rolling Stone has no relevance in this action since it pertains only to instances of unlawful conduct by D.A.R.E. which Mr. Glass, the author of the Rolling Stone article, acknowledges he falsely concocted. [Pls.' Opp. at 8.] Plaintiffs argue the Orders correctly assessed the gravamen of the Second Amended Complaint as "based on Rolling Stone's portrayal of D.A.R.E. as an enterprise engaging in unlawful acts," and properly found the requested discovery to be overbroad, unduly

burdensome, and only marginally relevant. [Pls.' Opp. at 8.] Thus, Plaintiffs argue, Defendants' defense of substantial truth is a "mirage" because, "as the author of both articles (Glass) has admitted, such purported "facts" *never existed* and such purported events *never happened*." [Pls.' Opp. at 9 (emphasis in original).]

### D. Defendants' Reply

Defendants' Reply reasserts that they seek discovery to prove the truth only of those statements "that plaintiffs' second amended complaint still challenges," regarding Plaintiffs' efforts to silence D.A.R.E.'s critics and suppress scientific research. [Defendants' Reply to Plaintiffs' Opposition ("Defs.' Reply").] The Order "mistakenly foreclosed this narrow but significant line of discovery, based on the plaintiffs' consistent mischaracterization of the allegations in their own complaint and misrepresentation of the discovery sought." [Defs.' Reply at 1.] Defendants insist the Second Amended Complaint is not confined to statements accusing Plaintiffs of criminal conduct, and to the extent that it pleads libel regarding statements addressing Plaintiffs' non-criminal strong-arm tactics, the discovery Defendants seek is highly relevant. [Defs.' Reply at 3, 5, 6 ("Plaintiffs make the exaggerated claim that the author has admitted to fabricating *everything* that plaintiffs challenge") (emphasis in original).]

### III. Discussion

### A. Legal Standard -- Review of a Magistrate Judge's Determination

Under Title 28 U.S.C. section 636(b)(1)(A), a district court may reconsider a magistrate judge's determination of non-dispositive

7

pretrial matters if the magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Federal Rule of Civil Procedure 72(a) similarly provides that such rulings may be set aside or modified by the district court only if found to be "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). Likewise, Local Rule 3.3.1 Governing Duties of Magistrate Judges for the Central District of California provides for review of magistrate judge decisions that are "clearly erroneous or contrary to law." C.D. Cal. Mag. J. R. 3.3.1. The reviewing court may not simply substitute its judgment for that of the deciding court. Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991) (citing United States v. BNS, Inc., 858 F.2d 456, 464 (9th Cir. 1988)). To conclude that a finding of fact was "clearly erroneous," the district court must arrive at a "definite and firm conviction that a mistake has been committed." Folb v. Motion Picture Industry Pension, 16 F. Supp. 2d 1164, 1168 (C.D. Cal. 1999) (quoting Federal Savings and Loan Ins. Corp. v. Commonwealth Land Title Ins. Co., 130 F.R.D. 507 (D.D.C. 1990)).

A special circumstance is presented, however, "[w]here the magistrate's decision concerns an evidentiary question of relevance[;] 'the Court must review the magistrate's order with an eye toward the broad standard of relevance in the discovery context. Thus, the standard of review in most instances is not the explicit statutory standard, but the clearly implicit standard of abuse of discretion.'" Wolpin v. Phillip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal. 1999) (quoting Geophysical Systems Corp. v. Raytheon, Inc., 117 F.R.D. 646, 647 (C.D. Cal. 1987)). A judge abuses his or

her discretion only by arriving at "'an erroneous conclusion of law or where the record contains no evidence on which he [or she] could rationally have based that decision.'" Wolpin, 189 F.R.D. at 422 (quoting Premium Services Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. 1975)). Hence, this Court applies the abuse of discretion standard to the Orders because they pertain directly to the relevance of the disputed discovery.

**B.   The November 24 and November 29, 1999 Orders**

   **1.   Legal Standard -- Scope of Discovery**

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," and that "[t]he information sought need not be admissible at trial if the information sought appears reasonably likely to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevance for purposes of discovery is defined very broadly. Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "Information is relevant to the subject matter if it might reasonably assist a party in evaluating the case, preparing for trial or facilitating settlement." Hickman v. Taylor, 329 U.S. 495, 506-507, 67 S. Ct. 385, 391-92, 91 L. Ed. 451 (1947). In deciding a discovery motion, the Court may balance the relevance of the requested information with the burden of producing it. Fed. R. Civ. P. 26(b)(2)(iii); Guruwaya v. Montgomery Ward, Inc., 119 F.R.D. 36, 39 (N.D. Cal. 1988).

///
///
///

### 2. The November 24, 1999 Order

#### a. Plaintiffs Provided Answers to Some of Defendants' Document Requests

The November 24, 1999 Order denied Defendants' motion to compel amended responses to their first set of document requests with respect to request numbers 9, 16, 64, 65, 66, 68, 69, 70, 77, 78, 79, 80, 84 and 89, "provided [plaintiffs] stipulate that there is a legitimate debate regarding the efficacy of the D.A.R.E. program." [November 24, 1999 Ord. of Mag. J. at 2.] Plaintiffs provided answers in response to some of these requests, including numbers 9 and 16, averring that responsive documents would be produced, and numbers 69, 70, 78-80, and 89, stating that D.A.R.E. had no such documents. [Declaration of Alonzo Wickers, Ex. 6 (Parties' Joint Stipulation re: Defendants' Motion to Compel Responses to Defendants First Set of Document Requests) at 13, 15, 17, 22, 24, 27, 29, 34.]

Since Plaintiffs have provided answers to the aforementioned requests in addition to their objections, Defendants are not entitled to further responses, and the Order denying Defendants' motion did not constitute an abuse of discretion as to them.

#### b. Document Request No. 65 Was Irrelevant

The Order did not constitute an abuse of discretion as to Request No. 65, which seeks all documents and communications regarding the efficacy of the D.A.R.E. program. This request is irrelevant because both parties have agreed that the efficacy of D.A.R.E. is not at issue. Defendants' assertion that this request might yield information related to purported strong-arm tactics used

10

by Plaintiffs to silence their critics is unpersuasive; the relevance of information sought by this request is attenuated at best.

### c. The Remaining Document Requests Sought Relevant Information

Although the November 24, 1999 Order applied the appropriate standard in evaluating Defendants' motion -- balancing the relevance of the information sought against the burden of producing it -- denying Defendants' motion to compel amended responses to certain document requests on the grounds that they were only marginally relevant and overly burdensome was an abuse of discretion.

The Second Amended Complaint sets forth eight specific allegations of libel. [See SAC at 7-8.] Contrary to Plaintiffs' characterization, not all of these allegations assert that D.A.R.E. engaged in unlawful activity. Some describe criminal activity by D.A.R.E. and its supporters; those statements have been acknowledged by Mr. Glass as his own inventions. Others, however, relate to non-criminal tactics which Mr. Glass contended D.A.R.E. used to intimidate and silence its critics. [See Pls.' Opp. at 26-32, Ex. D (Declaration of Stephen Glass).] Defendants seek to assert the substantial truth of these statements as an affirmative defense to Plaintiffs' allegations of libel.

Although Defendants contend that four allegations or portions thereof are outside the scope of the reports of criminal activity Mr. Glass admits were false, only three may be so characterized. One allegedly libelous excerpt reads: "One person close to the research

11

added: 'For the first time I can remember, we were scared to publish a study. D.A.R.E. tried to scare out science.'" [Defs.' Mot. for Recons. at 3.] This excerpt is specifically acknowledged by Mr. Glass in his deposition to assert "'facts,' mostly attributed to 'anonymous sources,'" which were "fabricated." [Pls.' Opp. at 31, Ex. D (Declaration of Stephen Glass).] Accordingly, Defendants cannot assert the truth of this statement as an affirmative defense to libel.

The three remaining excerpts from the Rolling Stone article reflect Mr. Glass's criticism of D.A.R.E.'s tactics in dealing with its critics, but do not describe any unlawful activity. They state:

   1. "But what's even more disturbing is that the organization, its supporters and the crusading ex-cop who leads it have tried to silence critics, suppress scientific research and punish nonbelievers." [SAC at 7.]

   2. "Academics and parents' groups say Levant's D.A.R.E. uses strong-arm tactics to suppress damaging research. They accuse D.A.R.E. of wielding political pressure . . . ." [SAC at 7.]

   3. "D.A.R.E. and its advocates have become so well-known for playing hardball with critics that drug researchers and journalists have developed a vocabulary for the events. Anyone who has been silenced, they say, has been 'D.A.R.E.'d.'" [SAC at 7.]

12

None of these excerpts relate to criminal activities by D.A.R.E. or its operatives. Rather, they allude to the strong-arm tactics described in Mr. Glass's article, and listed in the Second Amended Complaint; they remain at issue in the underlying case. Thus, Defendants are entitled to discovery in order to prove the statements' veracity, and their Motion is granted with respect to the following requests.

Request No. 64 seeks all documents and communications concerning the Research Triangle Institute and "any study" conducted there concerning D.A.R.E. This request is plainly relevant to Defendants' contention that Plaintiffs pressured RTI researchers not to publish the results of a study that was critical of D.A.R.E., and not unduly burdensome because it pertains only to one research institution and studies produced there regarding D.A.R.E.

Request No. 66 seeks all documents and communications regarding two researchers at RTI, including the letter they authored which was published in the April 7, 1997 issue of The New Republic. This request seeks highly relevant information regarding the assertion that Plaintiffs allegedly placed pressure on their critics not to publicize data critical of D.A.R.E. It is not unduly burdensome because it only seeks information regarding two individuals, and highlights the special importance of one specific document.

Request No. 68 seeks all documents and communications regarding the National Broadcasting Company ("NBC") or its parent company, General Electric ("GE"), and any coverage of D.A.R.E. by NBC,

including correspondence between Plaintiffs and NBC and GE. Such information is relevant to proving the truth of the assertions that Plaintiffs sought to suppress academic and media reports which were critical of D.A.R.E. The request is not unduly burdensome because it is sufficiently limited in scope.

Request No. 84 seeks all documents relating to the National Institute of Justice ("NIJ"), including two persons, Ann Voigt and Laurie Bright, concerning matters contained in Mr. Glass's articles for The New Republic and Rolling Stone. The request is relevant to Defendants' assertion that Plaintiffs sought to prevent publication of unfavorable research. It is not unduly burdensome as it pertains only to the NIJ and a single study critical of D.A.R.E.

### 3. The November 29, 1999 Order
#### a. Plaintiffs Provided Answers to Some of Defendants' Interrogatories

The November 24, 1999 Order denied Defendants' motion to compel amended responses to their first set of interrogatories, with respect to interrogatory numbers 3, 5, 6, 8, and 9, "provided [plaintiffs] stipulate that there is a legitimate debate regarding the efficacy of the D.A.R.E. program." [November 29, 1999 Ord. of Mag. J. at 2.] In response to four of these requests, Plaintiffs provided answers to Defendants' propounded discovery, including number 5, averring that D.A.R.E. would produce responsive documents; numbers 6 and 8, stating that D.A.R.E. was "not aware" or "unaware" of "any such persons;" and number 10, where D.A.R.E. responded by naming Rogers & Associates. [Declaration of Alonzo Wickers, Ex. 6 (Parties' Joint Stipulation re:

Defendants' Motion to Compel Responses to Defendants First Set of Interrogatories) at 12, 15, 21, 24.]

Since Plaintiffs provided answers to these interrogatories in addition to their objections, Defendants are not entitled to further responses, and the Order denying Defendants' motion did not constitute an abuse of discretion as to them.

### b. Interrogatory No. 3

Neither did the November 29, 1999 Order constitute an abuse of discretion as to Interrogatory No. 3, which requests that Plaintiffs identify all studies concerning D.A.R.E. or its curriculum of which Plaintiffs are aware. This interrogatory is overbroad, since Defendants only seek to assert the truth of allegations regarding pressure Plaintiffs allegedly applied to silence critics of the D.A.R.E. program.

### c. Interrogatory No. 8

Interrogatory No. 8 seeks the identity of persons known to Plaintiffs who communicated with anyone at NBC regarding proposed news reports concerning D.A.R.E. or its curriculum, and the identity of such contacts. The information sought is relevant because Defendants allege D.A.R.E. pressured NBC to cancel or postpone a broadcast of "Dateline NBC" that was critical of D.A.R.E. The interrogatory is not unduly burdensome because it only involves contacts with individuals at NBC with regard to a specific broadcast. Hence defendants' motion should have been granted as to this interrogatory.

## IV. Conclusion

For the reasons discussed herein, the November 24 and November 29, 1999 Orders were not abuses of discretion to the extent they denied Defendants' Motions to Compel Amended Responses to Document Request Nos. 9, 16, 69, 70, 78, 79, 80 and 84, and Interrogatory Nos. 5, 6, 9, and 10, because Plaintiffs provided answers to these inquiries. Likewise, the Orders were not abuses of discretion insofar as they denied Defendants' Motions to Compel as to Document Request No. 65 and Interrogatory No. 3.

The Orders improperly balanced the relevance and the burden of producing discovery sought by Document Request Nos. 64, 66, 68, and 84, and by Interrogatory No. 8. Denying Defendants' Motions as to this discovery was an abuse of discretion; it sought relevant information whose production would not impose an undue burden on Plaintiffs.

## V. Order

Accordingly, Defendants' Motion for Reconsideration of the November 24, 1999 and November 29, 1999 orders of the Magistrate Judge are GRANTED IN PART and DENIED IN PART, as described above.

To the extent the Orders of the Magistrate Judge are hereby reversed, Plaintiffs shall respond to all of the aforementioned document requests and interrogatories no later than February 4, 2000. Plaintiffs shall also: (1) provide written verification that they possess no discoverable materials responsive to Requests for Production numbers 69, 70, 78-80 and 89; and (2) provide written

16

verification that they are unaware of any persons who were privy to the communications indicated in Interrogatories 6 and 8.

To accommodate the additional discovery ordered herein, the discovery cut-off date is hereby reset from February 18, 2000 to February 25, 2000; the motion cut-off date is hereby reset from March 20, 2000 to April 3, 2000.

IT IS SO ORDERED.

Dated: January 27, 2000

VIRGINIA A. PHILLIPS
UNITED STATES DISTRICT JUDGE